**BANKER'S LIFE COMPANY,**
**Plaintiff-Respondent,**

v.

**CENCOR, INC., Defendant-Appellant.**

**No. WD 37038.**

Missouri Court of Appeals,
Western District.

Feb. 18, 1986.

Rehearing Denied March 27, 1986.

---

Michael J. Gallager, Thomas M. Franklin, Wassberg, Gallagher & Jones, Kansas City, for defendant-appellant.

Robert D. Benham, McAnany, Van Cleave & Phillips, Kenneth A. Yates, Kansas City, for plaintiff-respondent.

Before TURNAGE, P.J., and CLARK and LOWENSTEIN, JJ.

TURNAGE, Presiding Judge.

Banker's Life Company brought suit against Cencor, Inc. for a total of $58,-995.47 alleged to be due under an agreement between the two. Trial to a jury resulted in a verdict and judgment for $58,-995.00 in favor of Banker's and an order that Cencor pay $14,829.81 in prejudgment interest. Cencor contends there was no evidence to support the verdict directing instruction submitted by Banker's. Reversed.

Banker's petition alleged that it entered into an agreement with Cencor on December 1, 1979, to provide health insurance to the employees of Cencor. The petition alleged that a disagreement arose between the parties as to the type of plan which Banker's was to provide and to resolve the dispute the parties entered into a written agreement effective December 1, 1980. The petition alleges Cencor failed to pay under the agreement of December 1, 1980,

and that the amount claimed was due Banker's.

The evidence was that Cencor solicited a proposal from Banker's for a group health insurance plan. Banker's supplied written materials to Cencor for a plan which became effective December 1, 1979. In January of 1980 Banker's submitted a written agreement to Cencor but Cencor refused to sign. Thereafter, Banker's continued to supply health insurance to Cencor employees but did so without a written agreement. In November of 1980 Banker's and Cencor entered into a written agreement effective December 1, 1980. The agreement recited that the parties had entered into an agreement as of December 1, 1979, but that a dispute arose as to what type of insurance plan had been bargained for and that the agreement of December 1, 1980 was designed to compromise and settle various disputes arising out of the controversy over the December 1, 1979 agreement. In November of 1981 Banker's terminated Cencor's coverage for nonpayment of premiums.

The parties focus on the following provisions of the December 1, 1980 agreement:

1. Bankers Life Company is offering Cencor, Inc. a Conventionally Insured Plan effective December 1, 1980.

2. Had there been no dispute during the first plan year (December 1, 1979 to December 1, 1980) as to the type of Defined Liability Funding Agreement in force, Bankers Life Company would have received from Cencor, Inc. an additional amount of premium in order to establish a full Medical reserve equal to 26% of the annual non-pooled first year Medical premium. Because of the dispute, Bankers Life received a reduced premium allowing the establishment of a Medical reserve equal to 8.33% of first year non-pooled Medical premium. The amount of deficient reserve, therefore, is an amount equal to 17.67% of the first plan year non-pooled Medical premium.

3. Cencor, Inc. agrees to adopt the Conventionally Insured plan effective as of December 1, 1980, and to allow Bankers Life to accumulate the additional Medical reserves from the following;

(a) Any dividend earned; and

(b) Interest earned on Life and Medical reserves held at the beginning of each plan year.

4. In the event of termination of the Conventionally Insured plan on any date, or the Defined Liability Plan prior to December 1, 1980:

(a) Bankers Life Company will assume liability for run-out of all Medical claims in an amount equal to its accumulated Medical reserves, but never less than 8.33% of the non-pooled Medical premium for the December 1, 1979 to December 1, 1980 plan year.

(b) Cencor, Inc. will assume liability for the run-out of Medical claims in an amount which is in excess of the Medical reserves held by Bankers Life Company, but not to exceed 17.67% of the non-pooled Medical premium for the December 1, 1979 to December 1, 1980 plan year.

(c) Bankers Life Company will assume full liability for payment of the run-out of all Medical claims in excess of the maximum liability for Cencor, Inc. as specified in 4(b) above.

Banker's introduced the December 1, 1980 agreement into evidence and adduced testimony that Cencor was indebted to it for premiums in the amount of $28,464.47 and for reserves in the amount of $30,531.00. Cencor's position was that the agreement did not obligate it to pay either premiums or reserves.

The court gave a verdict directing instruction which authorized the jury to return a verdict for Banker's if the jury found the parties entered into an agreement whereby Cencor agreed to make payment of premiums and to reimburse Banker's for reserves and if Cencor failed to perform such agreements.

Cencor contends the agreement of December 1, 1980 does not obligate it to pay for reserves or premiums and that the instruction was therefore submitted without

evidentiary support. Banker's contends paragraph 3 when read in connection with paragraph 2 obligates Cencor to pay the premiums and reserves.

Paragraph 2 simply states what Banker's would have received from Cencor during the year December 1, 1979 to December 1, 1980 had there been no dispute. The paragraph further states that Banker's received a reduced premium below what it would have otherwise received. This paragraph does not obligate Cencor to pay any amount of money but rather states the amount of deficient reserve without obligating Cencor to pay the amount of deficiency. In fact paragraph 3 provides that Banker's may accumulate additional reserve from dividends and interest earned on Life and Medical reserves at the beginning of each plan year. Again this paragraph does not obligate Cencor to pay any amount of money.

Paragraph 4(a) provides that in the event of termination of the plan, Banker's would assume liability for run-out[1] of medical claims in an amount equal to the accumulated medical reserves paid but not less than 8.33% of the non-pooled premium for December 1, 1979 to December 1, 1980 plan year.

Paragraph 4(b) fixes Cencor liability for run-out claims in an amount in excess of medical reserves held by Banker's but not to exceed 17.67% of the non-pooled medical premium for the December 1, 1979 to December 1, 1980 plan year.

Nothing in paragraph 4 requires Cencor to pay any premiums or reserves. The only liability placed on Cencor in that paragraph is for a portion of run-out claims upon termination of the plan. However, there was no evidence as to the amount of run-out claims that were paid, if any, and Banker's did not pursue a theory that Cencor was liable for run-out claims. Rather, its theory was that Cencor was liable for the payment of reserves and premiums.

Nothing in the agreement of December 1, 1980 requires Cencor to pay any amount

to Banker's for either premiums or reserves. This court cannot make a new contract for the parties or rewrite their contract by construction since obligations of the parties are to be determined by what the contract says and not by what it might have said. *Rollins v. Schwyhart*, 587 S.W.2d 364, 366 (Mo.App.1979). It is fundamental that there must be substantial evidence of the existence of a contract and its breach in order to justify a judgment. *Home Trust Co. v. Shapiro*, 228 Mo.App. 266, 64 S.W.2d 717, 725[1] (1933).

Banker's failed to prove any contract by which Cencor agreed to pay premiums or reserves. Without proof of such an agreement it follows that there was no substantial evidence of a contract or a breach. Thus the judgment is not supported by the evidence and cannot stand.

The judgment is reversed.

All concur.

---

1. Run-out of medical claims refers to claims incurred prior to the time the plan is terminated but which have not been submitted for payment until after the plan is terminated. Thus the run-out would be the claims paid after termination of the plan.